IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SANDRA MEDLEY,        § | |
|    Plaintiff,        § | |
| § | |
| vs.        § | 7:11-CV-053-KA |
| § | |
| MICHAEL J. ASTRUE,        § | |
| COMMISSIONER OF SOCIAL        § | |
| SECURITY ADMINISTRATION,        § | |
|    Defendant.        § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

By Order Referring Case (Docket No. 4) this case was referred to the undersigned United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b) and Rule 72 of the Federal Rules of Civil Procedure for hearing, if necessary, and recommendation or determination. This is a Social Security appeal whereby Plaintiff Sandra Medley seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

Background

Plaintiff Medley alleges that she is disabled as a result of a myriad of disabling conditions. In the filing of her application for disability and supplemental security income ("SSI") benefits she listed her impairments as "Arthritis and nerve damage, fibromyalgia, small vessel disease, asthma, hbp, peptic ulcer disease ibc Bone Loss Depression." She claimed an on-set date of April 30, 2008 when she quit working as a licensed vocational nurse (LVN) because of her impairments. After her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge. That hearing was held on February 2,

2010. At the time of the hearing Plaintiff was 52 years old. She had taken the GED in lieu of graduating from high school and had completed an LVN training program. Her past relevant work was found to be as a licensed vocational nurse. She had not engaged in substantial gainful activity since the alleged on-set date.

      The ALJ determined that plaintiff demonstrated a combination of three severe impairments consisting of "fibromyalgia, history of cardiac impairment, and personality disorder" but found that the combination did not meet or medically equal the listed impairments.[1] So, the ALJ proceeded to determine Medley's residual functional capacity (RFC) finding that Medley retained the functional capacity to perform a wide range of "light work"[2] but with several physical limitations and that she retained the ability "to sustain concentration necessary for unskilled work, but also required working "in relative isolation with limited contact with peers, *supervisors* and the general public."[3] Based upon the testimony of the vocational expert, the ALJ found that Medley was unable to perform any of her past relevant work, but that there were available jobs in the national economy that she could perform. Therefore the ALJ found that Medley was not disabled as to qualify for disability insurance benefits.[4]

      In seeking reconsideration of the ALJ's decision at the appeal council level, Plaintiff Medley called to the attention of the council that in her decision the ALJ had wholly failed to

---

[1]    Tr. 19.

[2]    As defined in the regulations.

[3]    Tr. 20.

[4]    Tr. 24.

address Plaintiff's neck impairment[5] from degenerative disc disease reported seven years earlier by Dr. Donald John.[6] In his written report Dr. John had concluded that based on an EMG test Medley exhibited "chronic mild to moderate right C6 radiculopathy and Mild right cubital tunnel syndrome. His written report further recited that an MRI showed "diffuse right-sided foraminal stenosis at the C5-6 and C6-7 levels." This report[7] had been included as exhibit numbered 4F among Medley's medical records but was not mentioned at all in the ALJ's written decision. Nonetheless, the Appeals Council denied Medley's request for review. This left the ALJ's decision as the Commissioner's final administrative decision for purposes of judicial review.[8]

## Judicial Standards of Review

The standards for judicial review of final decisions of the Commissioner of Social Security are set out and well articulated in Magistrate Judge Cureton's order in *Seibert v. Astrue*,[9] as follows:

> "Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.,* and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 et seq., of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416(SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala,* 38 F.3d 232, 236

---

[5]  For the purposes of clarity in this opinion I have adopted this term "neck impairment" to reference the condition manifested in Medley's neck as reported in the medical records. No finding that the condition is an "impairment" within the statutory or regulatory scheme is intended.

[6]  Tr. 172-73.

[7]  Tr. 257-264 and 211.

[8]  Tr. 1-3.

[9]  2010 WL 6389303 (N.D. Tex. 2011)

(5th Cir.1994). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C.§§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel,* 168 .3d 152, 154 (5th Cir.1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is
defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985), *cited in Loza v. Apfel,* 219 F.3d 378, 392 (5th Cir.2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

      A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir.1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir.2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir.2000); *Hollis,* 837 F.2d at 1383."

Appeal Issues

Medley raised three areas of dispute regarding the ALJ's decision: 1. Medley's "neck impairment."[10] 2. ALJ's failure to cite the 5th Circuit's "Stone" decision or use its standard. 3. ALJ's incomplete hypothetical question to the vocational expert.

Neck Impairment Issue

With respect to Medley's neck impairment, Medley claims that the ALJ ignored her complaints and the medical records that showed that Medley suffered from degenerative disc disease. She asserts that the ALJ committed legal error by applying a wrong "severity" standard in the Step 2 analysis of the severity of Medley's combination of impairments. She argues that since the ALJ did not even mention her neck impairment, the ALJ must have *impliedly* made a finding that it was not "severe," that is, that her neck impairment had no more than a minimal effect on her work capacity. Medley argues that since the ALJ failed to cite or mention the 5th Circuit's "Stone" case, the ALJ is deemed to have made an error of law by applying the wrong standard for determining the severity of her neck impairment. Medley further asserts that this *implied* finding is not supported by substantial evidence. And, argues Medley, since the ALJ overlooked the neck impairment, she failed in her duty to develop the record. Finally, Medley claims that this failure prejudiced her because this neck impairment and the physical limitations caused by it were not considered by the vocational expert in his Step 5 analysis and testimony. And the ALJ's erroneous non-disabled finding that was based on this erroneous testimony.

To this argument the Commissioner responds that the ALJ rightfully ignored Medley's neck impairment or did not consider it "severe" because (1) the medical evidence before the ALJ

---

[10] See footnote 5.

<u>predated</u> the onset of disability date and numerous intervening reports of subsequent medical examinations which did not even mention any neck impairment or complaints of neck pain for years. Furthermore, during the intervening years between the diagnosis and the claimed onset date Medley had kept on working as a LVN, her relevant past work. The Commissioner asserts that the record as a whole supports the ALJ's findings, including those implied findings regarding Medley's neck impairment. The Commissioner especially emphasizes the numerous musculoskeletal findings referenced in more than 15 emergency room examinations of Medley in those intervening years.

As to the absence of any reference in the ALJ's decision to the "Stone" case, the Commissioner urges that even though the "magic words" were not used, the ALJ's written decision does recite the proper standard and does reflect that the ALJ used it.

To these arguments, Medley responds that the medical evidence, though predating the onset date, is not to be ignored since under the court's holding in *Loza v. Apfel*[11] that "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition remained unchanged." Medley cites interim instances when she did complain of neck pain and she urges that those interim medical reports that made no mention of her neck impairment were made only in emergency rooms where she had presented herself predominantly complaining of chest pains and shortness of breath. The musculoskeletal condition notations in those interim reports were not made as a result of a direct examination but were mere copies of one or more preceding reports.

---

[11] 219 F.3d 378 (5th Cir. 2000).

The Record

Exhibit 4F in the record before the ALJ[12] consists of Dr. Donald John's report dated April 1, 2005 containing his initial examination and initial findings, the EMG test results, and MRI test report from The MRI Center (dated April 14, 2005), and a Dr. John follow up report dated April 18, 2005. It recites that Medley complained of right shoulder pain that radiates into the "rue" (right upper extremity) with tingling sometimes in digits 4 & 5. Dr. John's initial diagnosis was "chronic mild to moderate right C6 radiculopathy and mild right cubical tunnel syndrome. He conducted and EMG test[13] and recommended the taking of a C-spine MRI.[14] The report of MRI test recited extensive findings of degenerative disc disease in Medley's cervical spine area with significant changes between C5-C6 and C6-C7 levels.[15] Dr. John's handwritten followup report of April 18 recites "There is lots of degenerative change in your neck=degenerative joint & disc disease=at C5-C6= more so to the right."[16] His follow up report of May 11, 2005 reported that "There has been some improvement but she continues to have some difficulty with pain.)[17] Dr. John referred Medley to Dr. Jose Gonzales at Kell West Family Clinic for follow up treatment.[18]

I find that the record reflects that over the intervening four years Medley presented

---

[12]   Tr. 257-264.

[13]   Tr. 259.

[14]   Tr. 257.

[15]   Tr. 260.

[16]   Tr. 261.

[17]   Tr. 264.

[18]   Tr. 246.

herself to the emergency rooms at United Regional Hospital on at least 15 occasions[19] in complaining of chest pain and shortness of breath but made no complaints of neck pain.  On the occasions of those visits Medley presented complaints only of chest pain or shortness of breath and the examinations appear to have been limited to exploring and/or testing for those conditions which were unrelated to her disc disease.  Nonetheless, the reports listed a musculoskeletal examination element.  Each time, the entry stated, "Musculoskeletal: pulses equal, no cyanosis, no edema. neurocascular intact. Range of motion normal."  These reports also reflected that the entrant had examined one or more of the previous reports of visits to the same emergency room at the same facility.  This latter observation may explain the verbatim repetition of the musculosketal entries as well as repetitive entries on some of the other examination elements.

## Absence of Findings on Neck Impairment

What then is the effect of the fact that the ALJ did not address Medley's neck impairment at all in her decision?  Was it missed, overlooked or ignored?  Is it, as Medley argues, for the court to imply findings that the ALJ did not make or to find that the ALJ failed to develop the record fairly and adequately? Or is it, as argued by the Commissioner, for the court to imply that the ALJ found that the neck impairment never was worth mentioning or never had any effect upon Medley's capacity?  I conclude it is neither.

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir.1999).  This burden carries with it the burden of raising the proper issue concerning one's own condition that interferes with one's own capacity to work.  At the very least, in the context of pursuing a disability claim the burden

---

[19]   Tr. 347, 393, 419, 432, 445, 457, 472, 502, 520, 539, 554, 591, 605, 618, 633

should fall to claimant to articulate some complaint to such a degree as to put the examiners[20] on notice to pursue the complaint further.  Here Medley failed to complain. Here, after her 2005 diagnosis of degenerative disc disease in her neck, Medley did not again complain of the neck pain to the health care providers. It was not until she filed her disability claim that she mentioned neck pain, and then only as one of a litany of eight conditions she claimed to affect her sleep[21] and where she made one mention of neck pain in the middle of her lengthy narrative remark.[22] She never referenced her neck pain during the hearing before the ALJ. She just complained of having pain all over.[23]

     I find that Medley failed to adequately raise an issue of an impairment arising from degenerative disc disease in her neck to warrant further development of the record by the ALJ.  I find that Medley failed to meet her burden to prove that she was disabled by reason of degenerative disc disease in her neck, either singly or in combination with the three impairments identified by the ALJ.  There is simply no evidence in the record that Medley's neck impairment had any effect on her ability to work in consideration of her age, education or work experience. I conclude that the ALJ did not apply an incorrect standard in that there was no necessity for the ALJ to consider Medley's neck pain as an impairment (either singly or in combination with the three identified impairments) in the ALJ's step 2 analysis.  Further,  I find that the ALJ's

---

[20]    Claimant's own health care providers as well as to the disability analyzers (including the ALJ).

[21]    Tr. 141, response to item 10.

[22]    Tr. 147.

[23]    Tr. 34, Line 22 "I feel in total pain;" Tr. 35, lines 1-3, "Q. "...what parts of your body are affected by pain? A. All my body."

findings concerning Medley's residual functioning capacity are adequately supported by the record.

### Absence of *Stone* Reference

In *Stone*[24] the 5th Circuit Court of Appeals declared "In view of both the Secretary's position in this case and our recent experience with cases where the disposition has been on the basis of non-severity, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to *20 C.F.R. § 404.1520(c) (1984)* is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." But express citation to that case or another by name or recitation of the standard itself is not required. We are instructed to look beyond "magic words" to determine if the ALJ used the correct standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

Here, in making her severity determination, the ALJ recited the standard by which she was to make the severity determination as follows:

> "An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a *minimal effect* on an individual's ability to

---

[24] *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

work. (20 C.F.R. 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p)."[25] (emphasis supplied)

Then, in making her express severity finding regarding the combination of three impairments she had identified, the ALJ stated, "These impairments cause more than *minimal limitation* in the claimant's ability to perform basic work related activities."[26] (emphasis supplied).

The *Stone* severity standard does not allow for *any* interference with work ability, not even minimal interference. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.") It is clear therefore that the ALJ did not apply the *Stone* standard.

However, Medley's argument based upon the absence of citation to *Stone* misses the mark because the ALJ did not deny the severity of Medley's combination of infirmities based on a non-*Stone* standard. Rather, the ALJ found that the combination was severe.[27] Remand in this case is unnecessary because the ALJ found that the impairments she had identified were indeed severe. I conclude that the failure to expressly cite *Stone*, or a similar case, though lamentable, is not alone justification for remanding this case to the Commissioner.

Hypothetical Question to Vocational Expert

Medley argues that the ALJ based her non-disability finding upon an erroneous opinion rendered by the vocational expert as a result of an insufficient, defective hypothetical question posed to him by the ALJ. Medley posits that the hypothetical question posed by the ALJ to the

---

[25]   Tr. 18.

[26]   Tr. 19.

[27]   Tr. 19, finding No. 3.

VE omitted any reference to "manipulative limitations in reaching, handling, fingering or feeling, arising from Medley's right upper extremity" impairment or that Medley's mental condition requires that she "work in relative isolation with limited contact with *peers, supervisors* and the general public."(emphasis supplied).

It is apparent that the ALJ did not include in his hypothetical questions to the VE any reference to any limitation of Medley's capacity to perform work arising from her neck impairment.[28] As I have previously found that Medley failed to meet the burden of establishing her neck condition as a severe impairment, I find that the ALJ's did not err in omitting any limitations arising from that Medleys's neck condition in his hypothetical question to the vocational expert.

Medley further complains that the ALJ used the wrong words in posing his hypothetical question to the vocational expert. In posing his question to the VE the ALJ included a limitation as follows:

> "In addition, this individual in the non-exertional areas would possess the concentration necessary for unskilled work.  This person would also really be required to work in relative isolation with limited contact with various *coworkers and the general public*..."[29](emphasis supplied).

This limitation did, indeed, vary from the limitation found by the ALJ in his decision. In his decision, the ALJ used these words:

> "in relative isolation with limited contact with *peers, supervisors and the general*

---

[28] In making his RFC determination, the ALJ found that the only limitations on Medley's capacity to perform a wide range of light work were "she can only stoop, kneel or crouch and can have no extended exposure to pollutants, dust or fumes. She is able to sustain concentration necessary for unskilled work, but requires to work in relative isolation with limited contact with peers, supervisors and the general public." Tr. 20.

[29] Tr. 45-46.

*public*."[30]

After filing her application in April, 2009, Medley underwent a consultive psychological evaluation by Richard Kownacki, Ph.D.,[31] who diagnosed her mental condition as "Major Depressive Disorder, Recurring, Severe; Panic Disorder; Borderline and Histrionic Personality Traits."[32] Thereafter, Medley underwent a internal medicine consultive examination by Dr. Farzana Sahi for her alleged conditions of Arthritis, Heart disease, Asthma, Ulcers and Fibromyalgia.[33] In neither report did these doctors report any limitation on Medley's working in contact with peers, co-workers, supervisors or the general public. Following these two consultive examinations, a state agency medical consultant (SAMC), reviewed the physical examination reports and a state agency psychological consultant ("SAPC") reviewed the medical examination reports. The SAMC's report[34] did not contain any limitation of Medley working in contact with peers, co-workers, supervisors, or the general public. The SAPC report[35] does reflect an analysis of the effect of Medley's mental condition on her social interaction. It reports she was moderately limited in the ability to interact appropriately with the *general public*, was moderately limited in her ability to get along with *coworkers or peers*.[36] This report did not address directly any limitation of Medley's work in contact with *supervisors*.

This latter report is certainly sufficient evidence to support the phrasing of the limitation

---

[30]     Tr. 20, Finding 5.

[31]     His report is found at Tr. 681-83.

[32]     Tr. 683

[33]     His report is found at Tr. 684-690.

[34]     Tr. 705-712.

[35]     Tr, 713-716.

[36]     Tr. 714, Section C. <u>Social Interaction</u>.

as the ALJ phrased it to the vocational expert. There is no indication anywhere in the medical records or the record as a whole that Medley had any limitation in her ability to work in contact with *supervisors*.  Thus, I find that the omission of the use of the term "supervisors" in the phrasing of the limitation posed to the vocational expert, was appropriate and supported by the SAPC's report.  I further find that in the context of this case and the evidence before the ALJ the term "peers" was used as, and is synonymous with, the term "coworkers." I find that the difference between the words used by the ALJ in formulating his questions to the vocational expert and in her decision was not prejudicial to Medley and was inconsequential.

## Conclusions and Recommendation

I conclude that the ALJ's RFC findings are supported by the evidence. I conclude that the ALJ's decision and conclusion that Medley has not been under a disability is supported by the record and is correct.  I recommend that the District Court  AFFIRM the Commissioner's final decision and DISMISS Plaintiff's Complaint with prejudice.

It is so ORDERED, this 25th day of October, 2011.

_____
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

      A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).